IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAHA F. NAGGEYE,

          Plaintiff,

       v.

CAROLYN COLVIN
ACTING COMMISSIONER OF SOCIAL
SECURITY

          Defendant.
_____

Case No. 3:13-CV-00942-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action under 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits. The Commissioner's decision is REVERSED and REMANDED for a payment of benefits with a disability onset date of September 28, 2006.

## PROCEDURAL BACKGROUND

Plaintiff filed an initial application for benefits claiming disability as of September 28, 2006. After a hearing, the administrative law judge (ALJ) found the plaintiff not disabled. Plaintiff appealed to this Court, where the Commissioner conceded errors by the ALJ required

1 – OPINION AND ORDER

remand for further proceedings. The ALJ improperly rejected the lay testimony of plaintiff's daughter, misapplied the standard as to determining the plaintiff's credibility, and erred in weighing the opinion of plaintiff's treating physician. TR 543.[1] Judge Aiken remanded the case for further proceedings. During this time, plaintiff filed a separate application for disability. The Commissioner approved this second application and the ALJ found the plaintiff disabled as of March 31, 2010.

This case concerns review of the ALJ's findings on remand regarding plaintiff's claim of disability as of September 28, 2006. Plaintiff assigns three errors by the ALJ: 1) errors in weighing the conclusions and opinions of plaintiff's treating psychiatrist; 2) insufficient reasoning to reject the plaintiff's testimony; and 3) insufficient reasoning to reject the lay testimony of plaintiff's daughter. Plaintiff argues that this Court should remand for payment of benefits. The Commissioner agrees the ALJ erred, but seeks remand for further proceedings.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can

---

[1] "TR" refers to the Transcript of Social Security Administrative Record [#7] provided by the Commissioner.

reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## FACTUAL BACKGROUND

The tragic origins of this case begin in Somalia, plaintiff's country of birth.[2] Plaintiff is approximately 54 years old.[3] Plaintiff grew up in Somalia and lived there until 1998, when she entered the United States as a refugee. As a child, plaintiff witnessed the starvation deaths of her parents. Plaintiff was then repeatedly abused, physically and sexually, first by her uncle and then while in the care of an orphanage. She also may have witnessed a coyote eat her parents' bodies. Since arriving in the United States, she has sought treatment for Post Traumatic Stress Disorder (PTSD), psychosis, and other mental illnesses which reportedly have caused her mental anguish. For example plaintiff suffers from flashbacks, nightmares, and experiences ongoing fearfulness of people and her surroundings. The plaintiff speaks very limited English, has had limited exposure to formal schooling, and has no past relevant work experience.

## DISCUSSION

"'[I]f the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.'" *Varney v. Sec'y of Health & Human Services (Varney II)*, 859 F.2d 1396, 1398, 1401 (9th Cir. 1988) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)) (adopting the Eleventh Circuit's credit-as-true rule). Originally, crediting testimony as true was limited to cases where there were no outstanding issues that must be resolved and where it was clear from the record

---

[2] The facts of the case are not in dispute and are taken from the pleadings and relevant portions of the ALJs' hearings.

[3] Upon entry into the United States, a government official assigned the plaintiff a date of birth of January 1960 as the date of her birth is unknown.

that the ALJ would be required to award benefits if the testimony were credited. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009) (explaining the origins of the credit-as-true rule); *but see Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending the *Varney II* credit-as-true- rule to situations that still required remand for further proceedings). The law regarding whether a court must employ the rule is contradictory and there currently seems to be a split of authority on this issue in the Ninth Circuit. *See Vasquez*, 572 F.3d at 593.

The purpose of the credit-as-true rule is to discourage an ALJ from reaching a conclusion about a claimant's disability status and then justifying this conclusion by ignoring evidence suggesting the opposite. *Id.* at 594. By attempting to prohibit this practice, the rule encourages the ALJ to carefully assess testimony in the first instance and attempts to prevent unnecessary administrative duplication. *Id.* Other factors, such as the age of the claimant and the length of time a claimant has been in the system, may also justify application of the rule. *Hammock*, 879 F.2d at 503. In fact, the *Varney II* court explicitly stated "[d]elaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage... [w]ithout endangering the integrity of the disability determination process, a principal goal of that process must be the speedy resolution of disability applicants' claims." *Varney II*, 859 F.2d at 1399 (describing the credit-as-true rule as perpetuating this goal of social security law).

Regardless of whether this Court remands for further proceedings or an award of benefits, the credit-as-true rule applies in this case. The plaintiff has been through two rounds of administrative proceedings over the course of eight years for this claim. The result of both instances has been a similar refusal to credit testimony with a subsequent concession by the Commissioner that the ALJ did not articulate sufficient reasons to discredit the testimony of the

4 – OPINION AND ORDER

treating psychiatrist, the plaintiff, and plaintiff's daughter. Remanding for further proceedings that would require the ALJ to supplement his decision only increases any harm, frustrations, and anguish experienced by the plaintiff by a delay in the process and goes against the purpose of the rule – to discourage after-the-fact justifications of a denial of disability. While a second hearing may be necessary in some situations, in this case another hearing is burdensome, unnecessary, and costly to all involved. If the ALJ was unable to justify his decision in a satisfactory manner after the first remand, there is no reason to give him a third bite at the apple. Thus, this Court finds it appropriate to credit-as-true the testimony of the treating psychiatrist (Dr. Kinzie), the plaintiff and the plaintiff's daughter.

A court has discretion to remand a case for further proceedings or for a finding of disability and an award of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remanding for an award of benefits is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*.

Further, a court can direct payment of benefits where "the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Id*.

The Commissioner argues that there are essentially four issues that need resolution: 1) whether the testimony, even if treated as true, establishes specific functional limitations on the plaintiff for which disability could be found; 2) whether the limitation testimony by the Vocational Expert (VE) was properly supported by evidence in the record; 3) what level of

weight would need to be given to the testimony if credited as true, and; 4) whether the ALJ would be required to change the RFC on remand in light of further scrutiny of the evidence.

As for the first issue, the Commissioner argues that neither the treating psychiatrist, Dr. Kinzie, nor the plaintiff's or her daughter's testimony individually establish specific limitations in work related activities from which a finding of disability could be found. Related to this, the Commissioner argues that, as the precise limitations stated within the hypothetical to the VE are not shown by substantial evidence in the record, these limitations may not be relied upon. Thus, the ALJ would need to solicit testimony from the VE regarding the specific limitations that are substantially shown within the record. However, in the unusual case where discredited testimony clearly establishes disability (even when the VE did not address the exact limitations established by such testimony), and where further proceedings would serve no useful purpose, a court should instead remand for a finding of disability. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This is one of those unusual cases.

Evidence within the record from Dr. Kinzie consists of two letters he wrote for the plaintiff's file (TR 313, 481) and the treatment notes from her appointments. The two letters largely state the same things. Mainly, they state that plaintiff suffers from psychosis (TR 313, 481), PTSD (TR 481), depression (TR 313), is disorganized (TR 313), suffers from severe mental illness (TR 313, 481) and cannot work for a year or, at least, more (TR 313, 481). The treatment notes themselves provide clearer information as to why he offers these conclusions in his letters. Among the many examples are, on February 5, 2008, the plaintiff was speaking to Dr. Kinzie about her son's criminal rape case and he noted it was "hard to get at this point." TR 382. Under analysis, among other things, he noted plaintiff has continued poor concentration and continued psychosis.

6 – OPINION AND ORDER

Other examples of observed behavior from their discussions are abundant and supports these and similar conclusions. From just July 2006 - August 2008, plaintiff reported having nightmares (TR 378, 79, 387), showed fearful behavior, which included even stating she was scared of her daughter (TR 378, 386, 388, 393), and having "worries" as if she was being watched etc. (TR 378, 385, 387, 388). Often, in these treatment notes, Dr. Kinzie noted the plaintiff looked sad or depressed (TR 385) and/or distracted and preoccupied, once even describing her as "withdrawn" (TR 385, 387, 389), and fatigued (TR 379). Often, the above observations accompanied reports of hallucinations (TR 387, 388, 389, 390, 391) and flashbacks (385, 387). These observations clearly show plaintiff had conditions that disrupted her life in a significant and real way. Stating these observations do not provide substantial support within the record for a limitation of concentration, effectiveness or productivity of less than a normal worker seems unreasonable.

The plaintiff testified that she had difficulty learning while she was in "after hour" school. TR 48, 50. She testified that she could not read or write in Somalian (her first language) and that she "know a few" (referring to her ability to add and subtract). *Id*. The plaintiff testified she had a hard time remembering things (TR 53) and trouble hearing in a variety of situations and settings (TR 51-52). Finally, the plaintiff testified that she had flashbacks of the tragedies in her life that are "in front of [her]," as if they were to "happen now." TR 55. Throughout the testimony, plaintiff repeatedly did not answer the question that the ALJ or her attorney asked, seemed to misunderstand the questions asked, and had difficulty wording her answers. Her attorney is even on record questioning her understanding of the questions he and the ALJ asked her. TR 51.

Plaintiff's daughter testified that she cooks for her mother, provides help for her when she goes to the bathroom or takes a shower and helps her with other tasks such as picking things up and completing household chores. TR 63, 70. She further testified to a back problem that has limited the plaintiff's cooking abilities. TR 66. She also testified that her mother has problems remembering to take her medicine (TR 70), which seem to stem from concentration problems where her mind "goes somewhere" and she is not able to do anything. TR 75. To this, plaintiff's daughter testified that, during these times, plaintiff is scared that she will "leave" and has memories of her past traumas. TR 76. These episodes, where she "thinks somewhere else," according to plaintiff's daughter, can last up to two weeks. *Id*. Further, the daughter testified that the plaintiff has to be reminded to use the bathroom. TR 521.

Other evidence sheds light upon the plaintiff's limitations as testified by the plaintiff and her daughter. Tom Kinzie, a social worker who visited the plaintiff anywhere from multiple times a week to once a month, noted plaintiff was unable to concentrate and had a hard time following directions. TR 153. He further noted she needed to be reminded of when to take her medicine and how much to take. TR 155. Finally, he noted witnessing unusual fears or behaviors from the plaintiff, associating it with her PTSD and depression, and noted plaintiff handled stress very poorly. TR 159. Alice Johnson, a nurse practitioner, noted her diagnosis of "pronounced neurosensory hearing loss," her mental health issues, and her slow movements. TR 482. She also opined that that the plaintiff does not appear to be exaggerating her symptoms and cited to an instance where plaintiff's pains eventually required surgery and the lack of requests for pain medication made by the plaintiff despite looking uncomfortable. *Id*. Finally, Ms. Johnson opined she could not see plaintiff sustaining full time employment without frequent absences due to her mental and physical limitations. *Id*.

8 – OPINION AND ORDER

The original limitations presented to the VE included, "if because of attention and concentration deficits, this [] claimant would be absent from the work place at unpredictable times, but such could rise to the level of eight hours per week…." TR 81. In the remand limitations, the ALJ presented the VE with the limitation "such poor concentration, persistence and/or pace that she would be unable to maintain the productivity of a normal employee… say 80 percent or less than a normal employee…." TR 523. The VEs' response to both limitations was that there would be no jobs that such a claimant could perform in the national economy. TR 81, 523.

From the record, it is clear that both the plaintiff and, to a lesser degree, her daughter, do not have a full and complete understanding of English. In fact, in both decisions, the ALJs included illiteracy among plaintiff's limitations in her RFC. TR 15, 500. Additionally, complicated cultural issues about mannerisms of speech and descriptions are present in this case. Requiring the plaintiff show exact or specific limitations through additional testimony is both unnecessary and burdensome because the cultural and language barriers would make any such attempt futile and imprecise by nature. In crediting the testimony as true and in light of the facts above, it becomes clear the testimony supports these broad and basic limitations offered to the VE. This is the *Benecke* type situation.

Here plaintiff's testimony showed a pervasive lack of awareness to the meanings of the questions asked of her, lack of memory loss and of pain associated with other injuries. Additionally, the plaintiff described that she has flashbacks of tragic events that seem real and "in front of me." Her daughter further testified that the plaintiff, when entering into these

flashback moments, is unable to do anything and is fearful of "leaving."[4] These times where she "thinks somewhere else" can occur for long periods. Her daughter also testified that plaintiff has concentration problems and she requires reminding to take her medicine and to go to the bathroom. Surely, the above testimony shows that plaintiff has less than full productivity. It seems unreasonable to describe somebody, who has flashbacks of tragic events in their life that interfere with normal functioning and needs reminding to perform basic human needs such as going to the bathroom, as being as productive as a normal employee. When one includes the evidence from Dr. Kinzie stating the plaintiff repeatedly appeared "withdrawn," fearful, and has nightmares causing her to lose sleep etc., this conclusion is clear. The limitations provided as a hypothetical to the VE are substantially supported within the record and thus may be relied upon.

Finally, the Commissioner argues that if the discredited testimony is credited as true, the ALJ would need to reassess the plaintiff's RFC. However, as described above, the ALJ has already presented the VE with a hypothetical that outlines the plaintiff's characteristics, finding she could physically perform light work with other specific limitations regarding her mental and educational issues. The ALJ later adopted those limitations in forming her RFC. However, the ALJ also already elicited testimony from the VE regarding the concentration and productivity limitations. Since the testimony properly shows such limitations are supported within the record, and the testimony is credited as true, the ALJ would simply have to add an additional limitation to the RFC consistent with the hypotheticals already presented to the VEs. This is an unnecessary step in the process. Testimony from the VEs already shows that these limitations would bar employment and, thus, a finding of disability is warranted because there would be no jobs available in the national economy. As the credited evidence and testimony substantially supports

---

[4] From the context of the testimony, "leaving" seems to mean death or dying.

the limitations as presented to the VEs in earlier proceedings, and there are no other outstanding issues to resolve, this Court remands for a finding of disability and the payment of benefits.

## CONCLUSION

For the reasons above, this Court REVERSES the Commissioner's decision and REMANDS for the payment of benefits with a disability onset date of September 28, 2006.

IT IS SO ORDERED.

DATED this 20th day of August, 2014.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge